**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| MUATA RAMESES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:06-cv-1842-SEB-JMS |
| | ) | |
| KELLER CRESCENT CO., | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Granting Defendant's Motion for Summary Judgment**
**and Directing Entry of Final Judgment**

For the reasons explained in this Entry, the defendant's motion for summary judgment must be **granted.**

**I. Background**

As used in this Entry, "Rameses" refers to the plaintiff, Muata Rameses, and "Keller Crescent" refers to the defendant, Keller Crescent, Inc.

Rameses alleges in his complaint that the termination of his employment violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* He also alleges that Keller Crescent failed to accommodate him by providing a "light weight" job. Keller Crescent seeks resolution of Rameses' claim through the entry of summary judgment.

"Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) (quoting Rule 56(c) of the *Federal Rules of Civil Procedure*). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.*

## II.  Discussion

### A.  Findings of Fact

On the basis of the pleadings and the expanded record, and specifically on the portions of that record which comply with the requirements of Rule 56(e), the following facts are undisputed for purposes of the motion for summary judgment. Keller Crescent's request to strike various documents submitted by Rameses with his response is **denied**; however, any documents submitted in opposition to the motion for summary judgment which are not properly identified by affidavit or are not otherwise admissible into evidence will be disregarded. Any documents Rameses did not produce to Keller Crescent before submitting them in conjunction with his response (as identified in Keller Crescent's opening brief) shall also be disregarded.

Rameses' employer, CBS Personnel Services, a temporary staffing agency, placed him with Keller Crescent in December 2005 as a general helper.[1] While he was placed with Keller Crescent, Rameses remained an employee of CBS. During his entire employment assignment with Keller Crescent, Rameses worked on second shift and was directly supervised by Brian Emmons. Emmons was, in turn, supervised by Dan Koch, the plant supervisor.

In his general helper role, Rameses' primary duties were to assist the Piggyback Operator in running the "piggyback" machine. A piggyback machine is used in the assembly of printed pharmaceutical literature. However, when the piggyback machines were not working properly or when work was slow, general helpers, including Rameses, might be placed on other jobs on a temporary basis. These temporary work assignments included sweeping floors, general cleaning, and running labeling or stripping machines ("Tray and Case Labels machines"). Such temporary work assignments are performed on an as-needed basis and are not permanent positions within the facility.

Keller Crescent began assigning helpers on the piggyback machine in early January 2006. That help consisted of picking up labels and packing them in a box or carton, which was known as "pick packing." The labels were not heavy but they were oily and hard to grasp. They could be picked up with either hand. Rameses' job helping on the piggyback machine did not require him to lift objects over 15 pounds.

Rameses claims that he is disabled because of carpel tunnel syndrome in his left arm.[2] Rameses began losing the strength and power in his left hand during January and February of 2006. He mentioned having aches and pains to Emmons throughout February 2006, however, he never presented work restrictions to Emmons. He saw a physician for his symptoms on March 2, 2006. On that date, his occupational therapist provided him with

---

[1]At times, Rameses refers to himself as a "material handler," however, his actual title was "general helper."

[2]Rameses also claims that he receives veteran disability payments for injuries to his lower back and knees, however, Rameses testified in his deposition that these alleged injuries are not the basis of his claims against Keller Crescent.

a thermoskin carpal tunnel wrist support to wear at all times. No further occupational therapy was indicated at that time, nor were any restrictions issued by Rameses' physician or occupational therapist. Rameses wore a back brace and arm brace while he worked at Keller Crescent and these items "absolutely" helped him perform his job adequately. When he was not assigned to the piggyback machine, Rameses would volunteer to work in the "Tray and Case Labels machine" area to give his hand and wrist some relief, because such work could be done at a slower pace.

Keller Crescent terminated Rameses' services on March 6, 2006. Rameses' direct supervisor, Emmons, based on his own observations and several verbal complaints from piggyback operators, determined that Rameses was not adequately performing his position because he could not keep up with the speed of the piggyback machines. Accordingly, Emmons requested that Rameses be replaced. Emmons did not believe Rameses to be disabled or to have a substantially limiting impairment.

Emmons also requested that other temporary general helpers be replaced because of their inability to keep up with the piggyback machines. On the same day he requested that Rameses be replaced, Emmons requested that Marjuan Barnes be replaced for the same reason. To Emmons' knowledge, Barnes neither has a disability nor has ever alleged to have a disability. Likewise, shortly after Rameses' and Barnes' termination, on March 16, 2006, Emmons requested that Sean Reed be replaced because he was not keeping up with the pace of the piggyback machines. To Emmons' knowledge, Reed neither has a disability nor has ever alleged to have a disability.[3] No one from Keller Crescent ever told Rameses that he was terminated because of any alleged disability.

In March 2007, approximately one year after his termination from Keller Crescent, Rameses' physician issued permanent work restrictions. According to his physician, Rameses' permanent work restrictions were as follows: "Maximum lifting 20#, 15# frequent lifting restriction." Additionally, his physician assigned a 5% PPI rating to Rameses' left upper extremity. No other medical restrictions have been issued by Rameses' physicians regarding his carpel tunnel syndrome. Rameses' physician did not restrict him from repetitive work. Rameses' March 2, 2006, treatment record, which he never gave to Keller Crescent, indicates "no further [occupational therapy] indicated at this time."

Rameses lives alone most of the time. At times, Rameses' 13 year old daughter stays with him. He lives in a house with a front and back yard. Rameses does all of his own cleaning and cooking. He does his own grocery shopping. He has no trouble bathing himself or brushing his teeth. None of the little things that require dexterity give him trouble. Rameses likes to walk, swim, and ride his bike. In the summertime, Rameses rides 3 to 5 miles a week. Some of his hobbies are beautifying his home and landscaping. Rameses mows his own yard with a push mower. It takes 45 minutes to mow his front yard and longer to do the back yard. Rameses also does his own weed-eating and trimming. He trims his hedge, which is over seven feet tall. He also does his own fence repairs and other

---

[3]Contrary to Rameses' belief, Keller Crescent does not have a policy or practice, written or otherwise, of permanently hiring temporary workers referred by CBS Personnel Services at the end of 90 days or at any other time.

small repair projects around his home relating to his bathroom and kitchen. He also helps his brother clean up a church that his brother owns, which involves picking up cans and litter around the church grounds and helping paint and waterproof the church's basement. Rameses spends time at the IUPUI library or online on a computer doing research. Rameses is able to drive his car, but has trouble parallel parking.

Although Rameses sometimes wears a wrist brace on his left arm, he does not wear it every day. Over-the-counter "icy hot," Tylenol and ordinary aspirin work pretty well for Rameses. When he uses these non-prescription items, he does not need to wear his arm brace. He does not take prescription medication.

## B. Statutory Overview and Methodology

The ADA forbids certain employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA also provides that an employer discriminates against a qualified individual with a disability by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability...." 42 U.S.C. § 12112(b)(5)(A).

Rameses may prove his discrimination claim either by presenting direct evidence or by relying on the indirect, "burden-shifting" method of proof outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). These models are applicable to a disparate treatment discrimination claim under the ADA. *See Robin v. Espo Engineering Corp.,* 200 F.3d 1081, 1089 (7th Cir. 2000).

Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption. *Rogers v. City of Chicago,* 320 F.3d 748, 753 (7th Cir. 2003); *Plair v. E.J. Brach & Sons, Inc.,* 105 F.3d 343, 347 (7th Cir. 1997). The direct evidence must show that the defendant said or did something indicating discriminatory animus with regard to the specific employment decision in question. *Plair,* 105 F.3d at 347. In short, "[d]irect evidence essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Rogers,* 320 F.3d at 753 (internal quotation omitted). "A plaintiff can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decision-maker.'" *Rhodes v. Ill. Dep't of Transp.,* 359 F.3d 498, 504 (7th Cir. 2004) (quoting *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 736 (7th Cir. 1994)). "That circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.,* 324 F.3d 935, 939 (7th Cir. 2003).

Under the alternative method, in *McDonnell Douglas,* the Supreme Court "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory treatment cases." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993). The test consists of three steps. *First,* the plaintiff must establish a *prima facie* case of discrimination. *Second,* if the plaintiff establishes a *prima facie* case,

the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981)). *Third,* if a legitimate, non-discriminatory reason is offered, the plaintiff must come forward with evidence to show that the stated reason is not the true one, but only a pretext for discrimination. *See McDonnell Douglas,* 411 U.S. at 802-04; *DeLoach v. Infinity Broadcasting,* 164 F.3d 398, 401 (7th Cir. 1999).

Rameses has failed to offer direct evidence in support of his claim, and therefore, the court will undertake its analysis under the indirect, burden-shifting methodology described above. "Without a *prima facie* case, the plaintiff cannot withstand summary judgment." *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1261 (7th Cir. 1993)(citing *Gilty v. Village of Oak Park,* 919 F.2d 1247, 1250 (7th Cir. 1990)). If a *prima facie* case is established or is assumed, *see Nawrot v. CPC Int'l,* 277 F.3d 896, 906 (7th Cir. 2002) (electing to turn directly to the question of pretext), a pretext analysis will be undertaken.

## C.  Analysis

### 1.  Disparate Treatment Claim

As to his claim that he was terminated on the basis of his disability, Rameses must satisfy four requirements for a *prima facie* case by submitting evidence that, if believed, would show that: (1) he was disabled within the meaning of the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees received more favorable treatment. *Rooney v. Koch Air, LLC,* 410 F.3d 376, 380-81 (7th Cir. 2005). The term "disability" is defined under the ADA as: (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment by one's employer. 42 U.S.C. § 12102(2); *Rooney,* 410 F.3d at 381. Rameses does not argue nor is there any evidence showing that there was a *record* of any impairment that substantially limited one or more major life activities, or that Keller Crescent *regarded him* as having such an impairment. Accordingly, the court will consider only whether Rameses had a physical or mental impairment that substantially limits one or more major life activities.

Rameses alleges that he was disabled by virtue of his left arm carpal tunnel syndrome. Rameses alleges that he is limited in the following activities: getting lug nuts off when attempting to change a flat tire; shoveling snow and scraping ice from his windows; climbing a ladder and cleaning out gutters; moving 60 pound "river rocks" from his car and around his yard; moving major appliances to clean behind them; flipping his mattress; moving furniture and other heavy household items; "moving pipes" in his basement and other plumbing work; and changing the oil in his car.

Major life activities are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).  "Substantially limits" means "unable to perform a major life activity that the average person in the general population can perform; or significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person

in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). When determining whether an individual is substantially limited in a major life activity, the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long term impact of or resulting from the impairment is considered. 29 C.F.R. § 1630.2(j)(2).

Rameses has not identified an affected major life activity listed in the regulations, however, each of the activities identified above involve strenuous exertion and/or heavy lifting. An inability to do heavy lifting does not substantially limit the major life activity of working nor does it constitute a disability within the meaning of the ADA. *See Squibb v. Memorial Medical Center*, 497 F.3d 775, 782 (7th Cir. 2007); *Williams v. Excel Foundry & Machine, Inc.*, 489 F.3d 309, 312 n.2 (7th Cir. 2005). "Performing manual tasks" is considered a major life activity, however, "[w]hen addressing the major life activity of performing manual tasks, the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job." *Mack v. Great Dane Trailers*, 308 F.3d 776, 781 (7th Cir. 2002). "An inability to lift heavy objects may disqualify a person from particular jobs but does not necessarily interfere with the central functions of daily life." *Id.* Caring for oneself is also considered a major life activity. *See* 29 C.F.R. § 1630.2(i). Rameses testified that he *could* perform tasks such as cleaning, cooking, grocery shopping, bathing himself, brushing his teeth, walking, swimming, riding bikes, mowing the lawn with a push mower, hedge trimming, weed-eating, performing small repair projects, and painting.

None of the activities identified by Rameses (changing a flat tire, shoveling snow, cleaning out gutters, lifting or pushing 60 pounds or other heavy items, flipping his mattress, and changing the oil in his car) constitute major life activities. In addition, in light of the many tasks Rameses admittedly can and does perform, the limitations he claims do not demonstrate that he is restricted in performing manual tasks or in caring for himself. Accordingly, Rameses has not shown that he was disabled within the meaning of the ADA.

Rameses lacks evidence showing that he satisfied the first prong of his *prima facie* case.  The court need not discuss at length, but does conclude, that Rameses also has failed to present evidence showing that he met his employer's legitimate employment expectations and that similarly situated employees received more favorable treatment. In addition, Rameses has not presented any evidence to rebut Keller Crescent's non-discriminatory reason for terminating his employment, that his work was too slow on the piggyback machines. Because he has not established his *prima facie* case nor shown pretext, Rameses cannot withstand summary judgment as to his disparate treatment claim.

## 2. Failure to Accommodate

As to Rameses' failure to accommodate claim, the *McDonnell Douglas* burden-shifting analysis is not necessary or appropriate. *Hoffman v. Caterpillar, Inc.* 256 F.3d 568, 572 (7th Cir. 2001). To establish a *prima facie* case for such a claim under the ADA, Rameses must show that: (1) he was a qualified individual with a disability; (2) Keller Crescent was aware of his disability; and (3) Keller Crescent failed to reasonably accommodate the disability. *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005); *Hoffman*, 256 F.3d at 572. A "qualified individual with a disability" is "'an individual

with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *McPhaul v. Board of Comm'rs of Madison County*, 226 F.3d 558, 563 (7th Cir. 2000) (quoting 42 U.S.C. § 12111(8)); *see also* 29 C.F.R. § 1630.2(m).

As discussed above, Rameses has not presented evidence showing that he was disabled within the meaning of the ADA. Moreover, he has not presented evidence showing that Keller Crescent was aware of a disability or regarded him as having a disability. Rameses testified in his deposition that he never asked for an accommodation. Rameses did inform Keller Crescent that he was seeking medical attention for his injured hand and wrist. Rameses first saw a physician on March 2, 2006.  He also told Emmons about pain in his hand and wrist before he saw the physician. There is no evidence, however, that Rameses informed Keller Crescent that he was disabled and required an accommodation. *See Cassimy v. Board of Educ. of Rockford Public Schools*, 461 F.3d 932, 937 (7th Cir. 2006)("Awareness of the condition, however, is not the same thing as a belief that the condition is substantially impairing."). Rameses never presented any work restrictions to Keller Crescent. To the extent he requested or volunteered to work on jobs other than the piggyback machine, the temporary assignments were not full-time or permanent jobs within the facility. The ADA does not require an employer to create new permanent positions. *Watson v. Lithonia Lighting*, 304 F.3d 749, 752 (7th Cir. 2002). For all of these reasons, Rameses has not shown that a genuine issue of fact exists as to whether he had a disability, whether his former employer was aware of a disability, and whether Keller Crescent failed to reasonably accommodate a disability. Therefore, Keller Crescent is entitled to summary judgment as to Rameses' failure to accommodate claim.

### III.  Conclusion

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *DeNovellis v. Shalala,* 124 F.3d 298, 305-06 (1st Cir. 1997) (internal quotation omitted). As the non-movant, Rameses bears the burden of coming forward with specific facts from the record which show a genuine issue of material fact. *Morfin v. City of E. Chi.,* 349 F.3d 989, 997 (7th Cir. 2003). As explained herein, Rameses has not come forward with evidence that establishes a *prima facie* case as to either of his claims. Accordingly, Keller Crescent's motion for summary judgment must be **granted.**

Judgment consistent with this Entry shall now issue. The costs of this action are assessed against the plaintiff.

**IT IS SO ORDERED.**

Date: 01/17/2008

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana